```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
BARBARA PAXTON,                        :
                                       :
                      Plaintiff,       :     15cv3737 (DLC)
                                       :
     -v-                               :     OPINION AND ORDER
                                       :
FLUOR ENTERPRISES, INC.,               :
                                       :
                      Defendant.       :
-------------------------------------- X
```

APPEARANCES:

For the plaintiff:
Brittany Sloane Weiner
Marsha Mozammel
Imbesi Law P.C.
450 Seventh Avenue, Suite 1408
New York, NY 10123

For the defendants:
Amy Joy Traub
Jacqlyn Rebecca Rovine
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

DENISE COTE, District Judge:

Barbara Paxton ("Paxton") has brought this action against her former employer, Fluor Enterprises, Inc. ("Fluor"), alleging that, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the New York State Human Rights Law ("NYSHRL"), she was not reasonably accommodated and discharged. On October 26, 2016, Fluor moved for summary judgment. For the reasons set forth below, the motion is granted in part.

**Background**

The following facts are undisputed or taken in the light most favorable to the plaintiff.  Paxton was born in 1950 with a single cleft lip and single cleft palate.  As a child, Paxton had three or four surgeries to address her cleft lip and palate, following which this condition was no longer visible to lay observers.

Paxton was hired in 1998 by Fluor's predecessor, Grubb & Ellis Management Services, Inc. ("GEMS"), as an administrator handling construction projects for GEMS's contract with IBM. From 2000 until 2006, Paxton worked for GEMS in one of many cubicles situated in a single, large room (the "open landscape").  During that time, Paxton received positive performance reviews.  Paxton testified at her deposition that she was repeatedly sick and absent from work as the result of sinus infections.  During that period, Paxton's physician, Dr. Kevin Lieu, prescribed her medication on only four occasions.[1]

In early 2006, Paxton asked the GEMS site manager, Raymond Andreassen ("Andreassen"), that she be permitted to sit in an enclosed office space.  Paxton was relocated to an enclosed office.  At Andreassen's request, Paxton provided a note from

---

[1] Although Paxton contends that Dr. Lieu's records are incomplete, she presents no evidence other than her own conclusory testimony to support this contention.

2

Dr. Lieu stating, "Paxton is recommended to avoid drafts due to sinus infections."  Around the same time, Paxton informed Andreassen that she had a cleft lip and palate and had undergone surgeries as a child to address this condition.  Paxton also told Andreassen that the surgeries had left her susceptible to colds and sinus infections.  Paxton remained in the office from February 2006 until September 2011.  During that period, Dr. Lieu prescribed Paxton medication on 14 occasions.

On October 1, 2011, Fluor replaced GEMS on the IBM contract and took over GEMS's office space.  Many GEMS employees, including Paxton, were interviewed and hired for positions with Fluor.  The only reference to Paxton's condition on her Fluor employment application was that she had a "special needs office environment."  As part of the transition from GEMS to Fluor, Fluor undertook a reorganization of Paxton's department, including reassigning Paxton to support a larger team with a different and more demanding set of tasks.

Given this new team and role, Fluor determined that it would be necessary to move Paxton from her enclosed office to a cubicle in the open landscape.  Informed by Andreassen that Paxton should be situated so as to avoid drafts, Fluor management sought to locate a cubicle with minimal airflow.  Although Fluor measured the air in the proposed cubicles and found that they had an air flow velocity below one foot per

3

minute, Paxton refused to move out of her office on the ground that it would interfere with her disability.

In an email sent on the morning of October 26, 2011, Fluor's director of operations and management, Steve Short ("Short"), explained Fluor's decision that Paxton would be relocated to the open landscape and informed Paxton that Fluor would provide a letter and a medical certification form for her to deliver to her physician to document her disability.  Rather than use Fluor's form, however, Paxton procured her own note from Dr. Lieu, which stated, "Ms. Paxton is suffering from bad URI/sinusitis/bronchitis, whenever she is exposed to drafts [o]r dusty environment due to her physical disabilities from previous surgeries.  Therefore she has been advised to avoid such environment at all times."

On November 2, 2011, Paxton met with Andreassen and two of Fluor's human resources representatives, Mary Smith and Stephanie Livingston ("Livingston").  Andreassen brought Fluor's medical letter and certification form to this meeting.  While discussing Fluor's and Paxton's concerns about Paxton's relocation and alleged disability, Paxton became upset and threatened to leave.  Livingston warned Paxton that if she left the meeting, she would be reprimanded.  Nonetheless, Paxton left, and Livingston decided to discharge Paxton.  The following day, Fluor sent Paxton a letter informing her of this decision.

4

Paxton commenced this action before the Honorable Analisa Torres on May 14, 2015. She brings claims against Fluor for disability discrimination, failure to provide a reasonable accommodation, hostile work environment,[2] and retaliation. Fluor moved for summary judgment on October 26, 2016. On November 22, 2016, the case was reassigned to this Court.

## Discussion

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Smith v. County of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (per curiam) (citation omitted). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015), cert. denied, 136 S. Ct. 1684 (2016) (mem.). If the

---

[2] Paxton did not oppose Fluor's motion with respect to her hostile work environment claim. This claim is deemed abandoned. Kovaco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 143-44 (2d Cir. 2016).

5

moving party makes this initial showing, the burden then shifts to the opposing party to establish a genuine dispute of material fact.  El-Nahal v. Yassky, 835 F.3d 248, 252, 256 (2d Cir. 2016).

The party opposing summary judgment "may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "Conclusory statements, conjecture, and speculation are insufficient to create a genuine factual dispute," Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 319 (2d Cir. 2008), as is "mere speculation or conjecture as to the true nature of the facts."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In cases involving claims of employment discrimination "an extra measure of caution is merited in [considering] summary judgment" because "direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial

6

evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted).  Nonetheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008).  Ultimately, the test for summary judgment "is whether the evidence can reasonably support a verdict in plaintiff's favor."  James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000).

**I.   Disability Discrimination**

   A. ADA

Paxton challenges her discharge as the product of discrimination on the basis of disability, in violation of the ADA.  The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to [inter alia] . . . discharge of employees."  42 U.S.C. § 12112(a).  An ADA employment discrimination claim is subject to the burdenshifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1972).  McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013).

Under McDonnell Douglas, once a plaintiff makes out a prima facie case of retaliation or discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.

7

411 U.S. at 802-04.  If the defendant produces evidence of such a reason, the plaintiff must point to evidence sufficient to permit a rational factfinder to conclude that the defendant's reason is merely a pretext or that the defendant's action was based at least in part on discrimination or retaliation.  Id. at 804-05; Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014) (per curiam).

> In the context of the ADA,
>
> to establish a prima facie case . . . , a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability.

McMillan, 711 F.3d at 125 (citation omitted).

Summary judgment is granted to Fluor with respect to Paxton's disability discrimination claim.  Plaintiff has failed to establish any genuine dispute of material fact as to an essential element of her prima facie case: on the evidence in the record, no reasonable jury could find that Paxton is disabled within the meaning of the ADA.

The ADA defines disability to "mean[], with respect to an individual –

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment . . . ."[3]

42 U.S.C. § 12102(1). The ADA further defines major life activities as including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as "the operation of a major bodily function," such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."  Id. § 12102(2). Finally, the ADA instructs that "[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals . . . , to the maximum extent permitted by the [ADA's] terms."  Id. § 12102(4)(A).

In determining whether an impairment "substantially limits" one of the aforementioned activities, courts are to construe that term "broadly in favor of expansive coverage."  29 C.F.R.

---

[3] Paxton concedes that Fluor did not regard her as having a disability for purposes of the third of these definitions.

§ 1630.2(j)(1)(i). Courts may "consider, as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs [it]; and/or the duration of time it takes the individual to perform [it]." Id. § 1630.2(j)(4)(i).

Paxton identifies her disability as her birth with a cleft lip and palate. She identifies three major life activities that she contends are substantially limited by her cleft lip and palate: speaking, eating, and breathing. With regard to speaking, Paxton testified at her deposition that her cleft lip and palate have not prevented her from speaking but that she "had speech lessons." As to eating, Paxton testified at her deposition, "I have to be careful in chewing because I've had surgery on my pallet [sic] and I certainly don't want anything sharp or jabbing into it or anything like that, but on a daily basis it's not a problem." There is nothing in her medical records concerning any impairment that she may experience in these life activities.

In order to survive summary judgment in the absence of medical evidence, the Second Circuit requires "evidence that conveys, in detail, the substantially limiting nature of [the alleged] impairment." Rodriguez v. Village Green Realty, Inc., 788 F.3d 31, 44 (2d Cir. 2015). Paxton's vague and undetailed testimony does not support the inference that the speaking or

10

eating limitations, if any, imposed by her congenital cleft lip and palate are substantial.  On this testimony alone, no reasonable jury could find a substantial limitation on Paxton's ability to speak or eat.

Paxton's third and final asserted limitation is on her ability to breathe.  The crux of Paxton's contention is that her cleft lip and palate render her more susceptible to respiratory infections and that, as a result, she must avoid cold, drafty, or dusty environments.  The record contains evidence that Paxton at times suffered from infections such as sinusitis and rhinitis.  The evidence, however, does not support an inference that these infections were caused by Paxton's cleft lip and palate.  Paxton has provided no expert testimony that these infections were caused by the surgically repaired cleft lip and palate.  Although Paxton suggested to at least one of her medical providers that there was such a causal link, the medical records do not reflect that any providers made this determination.[4]  Whereas Paxton can competently testify to her

---

[4] Dr. Lieu's unsworn letter to Fluor in 2011, which states that Paxton "is suffering from bad URI/sinusitis/bronchitis, whenever she is exposed to drafts [o]r dusty environment due to her physical disabilities from previous surgeries," is inadmissible to prove the truth of the matter asserted.  See Fed. R. Evid. 802; Capobianco v. City of New York, 422 F.3d 47, 55 (2d Cir. 2005) ("[U]nsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment.").

11

experience of her symptoms, this complex issue of medical causation is not within her personal knowledge.  See Fed. R. Evid. 602; cf. Barnes v. Anderson, 202 F.3d 150, 158-61 (2d Cir. 1999) (reaching the same conclusion in the personal injury context); Henry v. A/S Ocean, 512 F.2d 401, 408 (2d Cir. 1975) (same).  In sum, Paxton points to no competent, admissible evidence to establish that her cleft lip and palate, or the surgical repairs to those conditions, substantially limited her ability to breathe.

Having failed to identify any genuine dispute as to whether Paxton is disabled within the meaning of the ADA, Paxton cannot establish a prima facie case of disability discrimination under the ADA.  Accordingly, summary judgment is granted with respect to this claim.

  B. NYSHRL

For much the same reasons, Paxton cannot establish a prima facie case of disability discrimination under the NYSHRL.  Although the NYSHRL defines "disability" more broadly than the ADA, Krist v. Kolombos Rest., Inc., 688 F.3d 89, 97-98 (2d Cir. 2012), it nevertheless requires "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted

clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292(21)(a).

Paxton has conceded that her cleft lip and palate do not prevent the exercise of any "normal bodily function." And for the reasons just stated, there is no competent evidence of any impairment that is demonstrable by medically accepted clinical or laboratory diagnostic techniques. Therefore, summary judgment is granted with respect to Paxton's NYSHRL disability discrimination claim.

## II.  Failure to Accommodate

Paxton's failure to accommodate claims under the ADA and NYSHRL also require that she be a person with a disability within the meaning of those statutes. 42 U.S.C. § 12112(b)(5)(A); N.Y. Exec. Law § 296(3)(a). Because there is no genuine dispute that Paxton does not have a disability within the meaning of the ADA or the NYSHRL, she cannot sustain her failure to accommodate claims against Fluor. Accordingly, summary judgment is granted with respect to those claims.

## III. Retaliation

Finally, Paxton alleges that she was discharged in retaliation for her complaints about disability discrimination and accommodation. Although Paxton's discrimination and accommodation claims must fail, she may nevertheless succeed on her retaliation claims "so long as [s]he can establish that

13

[s]he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted). Retaliation claims under the ADA and NYSHRL follow the same standards and the previously described McDonnell Douglas framework. See id.

To state a prima facie case of retaliation, a plaintiff "must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took some adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Id.; see also 42 U.S.C. § 12203(a); N.Y. Exec. Law § 296(7). "A plaintiff's burden at this prima facie stage is de minimis." Treglia, 313 F.3d at 719.

Fluor does not appear to contest the first three prongs of Paxton's prima facie case: Plaintiff's complaints to her supervisors and to human resources concerning her alleged disability were activities protected under the ADA, Fluor was aware of those activities, and Fluor discharged Paxton. In addition, Fluor has not shown that it is entitled to summary judgment on the final prong: that there was a causal connection between Paxton's complaints and her discharge. Here, Paxton's discharge followed within three weeks of her first complaints

14

and was directly precipitated by a meeting with Fluor management to discuss Paxton's complaints.  See Littlejohn v. City of New York, 795 F.3d 297, 319-20 (2d Cir. 2015).

Moreover, Paxton has presented evidence from which a jury could conclude that Fluor's stated basis for discharging Paxton -- insubordination -- was a "pretext for impermissible retaliation."  Treglia, 313 F.13 at 721 (citation omitted). Given this genuine dispute of material fact, summary judgment must be denied with respect to Paxton's ADA and NYSHRL retaliation claims.

## Conclusion

Fluor's October 26, 2016 motion for summary judgment is granted as to Paxton's discrimination and failure to accommodate claims, and it is denied as to her retaliation claim.

SO ORDERED.

Dated:  New York, New York
        March 3, 2017

_____
DENISE COTE
United States District Judge